# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| GLENN EAGLEMAN, THERESA SMALL, and CELESIA EAGLEMAN, <br><br> Plaintiff, <br><br> vs. <br><br> ROCKY BOYS CHIPPEWA-CREE TRIBAL BUSINESS COMMITTEE or COUNCIL, et al, <br><br> Defendants. | CV 14-73-GF-BMM <br><br><br> **ORDER** |

## **I. SYNOPSIS**

Plaintiffs Glenn Eaglemen, Theresa Small, and Celesia Eagleman filed a Second Amended Complaint on May 13, 2015. (Doc. 11.) Plaintiffs seek declaratory relief and injunctive relief against Defendants. Defendants Chippewa-Cree Housing Authority, Donna S. Hay, and Thela Billy (collectively "CCHA") filed a motion to dismiss. (Doc. 16.) The remaining defendants filed a Concurrence to CCHA's Motion to Dismiss. (Doc. 29.)

1

## II. FACTS

Plaintiffs filed suit in Chippewa Cree Tribal Court of the Rocky Boy's Indian Reservation ("Tribal Court") against Defendants in 2009 to recover damages resulting from an explosion that occurred in April 2007. (Doc. 16-1.) Plaintiffs Glenn and Celesia Eagleman are members of the Chippewa-Cree Tribe and their niece, Theresa Small, is a Fort Belknap Reservation tribal member. Plaintiffs resided on trust property on the Chippewa-Cree Reservation at the time of the explosion. (Doc. 16-1 at 2-3.) The Tribal Court dismissed Plaintiffs' claims based on the expiration of a one-year statute of limitations and Defendants' protection from suit under tribal sovereign immunity. (Doc. 16-4.)

Plaintiffs appealed the Order to the Appeals Court of the Chippewa-Cree Tribal Court ("Tribal Appeals Court"). (Doc. 16-5.) The Tribal Appeals Court affirmed the Tribal Court's dismissal of Plaintiffs' claims except as to Defendant Mike Rosette on October 7, 2011. (Doc. 16-6 at 16.) The Tribal Appeals Court remanded Plaintiffs' claims against Rosette to the Tribal Court for further consideration. (Doc. 16-7 at 3.)

Plaintiffs filed a Complaint in this Court on October 7, 2014 — three years after the Tribal Appeals Court issued its order. (Doc. 1.) Defendants have moved to dismiss the Complaint. Defendants argue that Plaintiffs' Complaint should be dismissed based on the expired one-year statute of limitations, the doctrine of

laches, the Court's lack of subject matter jurisdiction, and the Defendant's protection under tribal sovereign immunity. (Doc. 16.)

### III. DISCUSSION

Defendants argue that tribal sovereign immunity divests the Court of any subject matter jurisdiction that it arguably may possess. Tribal sovereign immunity limits a federal court's subject matter jurisdiction over suits against an Indian Tribe. *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1015-16 (9th Cir. 2007). Tribal sovereign immunity protects tribes from suit absent clear waiver by the tribe or express authorization by Congress to abrogate tribal sovereign immunity. *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). Tribal sovereign immunity extends to suits for declaratory or injunctive relief and should not be defeated by an allegation that the tribe acted beyond its powers. *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991).

Defendant argues that CCHA and its officials enjoy no tribal sovereign immunity. The court addresses, in turn, whether CCHA and its officials possess tribal sovereign immunity, and if so, whether CCHA and its officials voluntarily waived that immunity.

3

### A. CCHA as an arm of the tribe

The Tribe chartered CCHA through tribal ordinance. (Doc. 16-12 at 2.) The Tribe operates CCHA on Rocky Boy's Reservation. CCHA seeks to provide "decent, safe and sanitary dwellings for families of low income." (Doc. 16-12 at 3.) Defendants argue that CCHA acts as an arm of the Tribal Government and enjoys immunity from suit.

Plaintiffs essentially argue that CCHA fails to qualify as an arm of the tribe. Plaintiffs assert that CCHA should be characterized as an entity incorporated under federal law by the Tribe for business purposes and thus enjoying no tribal sovereign immunity. The appropriate question for the Court should be "whether the entity acts as an arm of the tribe so that its activities are properly deemed to be those of the tribe." *Id.*

Tribal sovereign immunity may extend to the tribe's business activities. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1046 (9th Cir. 2006). The plaintiff in *Allen* brought a suit against the Gold Country Casino, a tribal entity formed by a compact between the Tyme Maidu Tribe and the State of California. *Id.* at 1045-46. The plaintiff argued that tribal sovereign immunity failed to protect the casino. *Id.* The Ninth Circuit considered the fact that the Tribe had authorized the casino through a tribal ordinance when it determined that the casino functioned as an arm

4

of the tribe. *Id.* at 1046-47. The Court also considered the non-revenue producing benefits that the Casino provided for the Tribe. *Id.*

The Chippewa-Cree Tribe similarly chartered CCHA through a tribal ordinance. (Doc. 16-12.) CCHA similarly provides benefits other than revenue production to the tribe. For example, CCHA provides affordable housing conditions on the Reservation as well as employment opportunities. The Ninth Circuit has recognized, in fact, that a similar housing authority, organized and authorized through a tribal ordinance, served as an arm of tribal government. *E.E.O.C. v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1074 (9th Cir. 2001). The tribe's sovereign immunity extends to the housing authority.

### B. CCHA Director and Employee

Plaintiffs contend that the Tribe's sovereign immunity fails to extend to the actions taken by CCHA director, Donna S. Hay, and CCHA employee, Thela Billy. The viability of Plaintiffs' claims against the CCHA employees turn on two considerations: (1) whether Plaintiffs have sued the CCHA employees in their official or personal capacity, and (2) whether the remedy would operate against the Tribe. *See Maxwell v. County of San Diego*, 708 F.3d at 1087-90 (9th Cir. 2013).

Tribal sovereign immunity extends to tribal officials sued in their official capacity. *Cook v. AVI Casino Enterprises, Inc.,* 548 F.3d 718, 727 (9th Cir. 2008). Tribal sovereign immunity fails to bar individual capacity suits against tribal

5

employees when the plaintiff seeks damages from the individuals personally. *Maxwell*, 708 F.3d at 1087-90. This exception applies even if the plaintiff's claims involve actions that employees allegedly took in their official capacities within the scope of their employment. *Id.*

A tribal fire department and tribal paramedics responded to a shooting incident involving a victim at a residential home in *Maxwell*, 708 F.3d at 1079-80. The victim died while being transported by the tribal paramedics to a medical facility. *Id.* at 1081. The shooting victim's family members sued sheriff's officers, the tribal fire department, and tribal paramedics based on delayed medical treatment. *Id.* The plaintiffs' complaint sought tort damages from the tribal paramedics in their personal capacities. *Id.* at 1087. The Ninth Circuit determined that tribal sovereign immunity did not protect the tribal paramedics. The Court reasoned that the "damages [would] come from their own pockets, not the tribal treasury." *Id.* at 1088.

The Court in *Maxwell* focused on the remedy sought rather than whether actions of tribal officials arose out of actions that they had taken in their official capacities. *Id.* Tribal sovereign immunity bars suits due to the fact that recovery would operate against the tribe. *Id.* Courts should focus on the essential nature and effect of the relief sought and evaluate whether "the judgment sought would expend itself on the public treasury or domain, or interfere with the public

6

administration, or if the effect of the judgment would be to restrain the sovereign from acting, or compel it to act." *Id.*

*Maxwell* reviewed previous immunity decisions to explain the difference between official and personal capacities suits under the new "remedy-focused" analysis. For example, an intoxicated tribal casino employee operating a motor vehicle struck and injured the plaintiff in *Cook*, 548 F.3d at 721. The casino employee had been served alcohol at a casino function by other casino employees. *Id.* The plaintiff sued the casino and other casino employees in their official capacity to establish vicarious liability against the tribe. *Id.* at 720. The Ninth Circuit determined that the tribe represented the "real, substantial party in interest and [was] entitled to invoke sovereign immunity." *Id.* The Court precluded plaintiffs from "circumvent[ing] tribal immunity through a mere pleading device." *Id.* (internal quotations omitted.)

Plaintiffs have named Defendants Thela Billy and Donna S. Hay in their official and individual capacities. (Doc. 1.) Plaintiffs name all other Defendants in their official capacities. *Id.* The Complaint filed in this Court fails to differentiate the alleged conduct of Billy and Hay undertaken in their official capacities compared to alleged conduct undertaken in their personal capacities. *Id.* The Complaint also fails to differentiate the alleged conduct of Billy and Hay from conduct of any other Defendant. *Id.*

The underlying complaint alleges that Billy "improperly authorized Mike Morsette . . . to dispose of the condemned house materials." (Doc. 1-1 at 7.) The underlying complaint alleges that Hay misled Plaintiffs regarding the availability of insurance money. (Doc. 1-1 at 9.) The bar against official capacity claims means that "tribal officials are immunized from suits brought against them *because of* their official capacities—that is, because the powers [tribal officials] possess in those capacities enable them to grant . . . relief on behalf of the tribe." *Maxwell*, 708 F.3d 1075, 1088 (9th Cir. 2013) (citing *Native Am. Distrib. v. Seneca-Cayuga Tobacco Co.*, 564 F.3d 1288, 1296 (10th Cir. 2008) (emphasis in original). It appears Plaintiffs brought this suit against Billy and Hay *because of* their official capacities with CCHA.

More importantly, Plaintiffs seek to recover from Billy and Hay in their official capacity and in their individual capacity. Plaintiffs seek to recover $20,000,000. A judgment in this case against Billy and Hay and the other Defendants would operate against the tribe. The Court should not allow Plaintiffs to "circumvent tribal sovereign immunity" merely by naming in their pleading Billy and Hay as Defendants in their individual capacities. *Cook*, 548 F.3d at 721. The Tribe represents "the real and substantial party in interest" under these circumstances. *Maxwell*, 708 F.3d at 1088.

**C. Waiver of Sovereign Immunity**

The Court must now determine whether Defendants waived tribal sovereign immunity. Plaintiffs first allege that a waiver of sovereign immunity may have existed in the lease agreement between Glenn Eagleman and CCHA. At the hearing, however, Defendants presented the lease agreement which contained no waiver of sovereign immunity. Plaintiffs' counsel conceded at the hearing that the lease agreement contained no waiver provision.

Plaintiffs next rely on their contention that Defendants waived tribal sovereign immunity through the "sue and be sued" provision of CCHA's tribal ordinance. The provision reads:

> The Council hereby gives its irrevocable consent to allowing the Authority to sue and be sued in its corporate name, upon any contract, claim or obligations arising out of its activities under this ordinance and hereby authorizes the Authority *to agree by contract* to waive any immunity from suit which it might otherwise have; but the Tribe shall not be liable for the debts or obligations of the Authority, except insofar as expressly authorized by this ordinance.

(Doc. 16-12 at 7.) (emphasis added).

Waivers of tribal sovereign immunity must be explicit and unequivocal. *Maxwell*, 708 F.3d at 1087. Defendants argue that a plain reading of the provision demonstrates that the clause provides CCHA with the ability to waive its sovereign immunity *by contract*. Defendants argue that the provision, without a written contract waiving immunity, fails to constitute an unequivocal waiver.

9

A district court in Idaho determined that a "sue and be sued" clause waived tribal sovereign immunity. *Snowbird Const. Co., Inc. v. U.S.,* 666 F. Supp. 1437, 1441 (D. Idaho 1987). The Idaho district court relied on the Eighth Circuit opinion in *Weeks Const., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670 (8th Cir. 1986). The Court in *Weeks* also determined that a "sue and be sued" clause waived sovereign immunity. *Weeks Const., Inc.*, 797 F.2d at 670-71.

The Eighth Circuit later addressed its *Weeks* opinion in *Dillion v. Yankton Sioux Tribe Hous. Auth.*, 144 F.3d 581, 583 (8th Cir. 1998). The plaintiff in *Dillion* brought suit against a housing authority alleging that it had waived tribal sovereign immunity through a "sue and be sued" clause in its tribal charter. *Id.* at 582. The plaintiff relied on *Weeks. Id.* The Eighth Circuit determined that the plaintiff's reliance on *Weeks* failed "because in *Weeks*, and the cases cited therein, an express waiver of sovereign immunity was found in a written contract." *Id.* at 583. The Court reasoned that no separate written agreement existed in *Dillion* when it determined that the housing authority did not waive tribal sovereign immunity. *Id.* at 584.

The Eighth Circuit addressed a "sue and be sued" clause again in *Hagen v. Sisseton-Wahpeton Community College*, 205 F.3d 1040, 1044 (8th Cir. 2000). The "sue and be sued" clause provided that a tribal college "could 'sue and be sued in its corporate name in a competent court to the extent allowed by law.'" *Hagen*, 205

F.3d at 1044. It also provided that the tribe "gave its 'consent to allowing the [college] to sue and be sued upon any contract' and 'authorize[d] the [college] to waive any immunity from suit which it might otherwise have." *Id.* The Eighth Circuit determined that the "sue and be sued" clause did not act as a general waiver of tribal sovereign immunity. *Id.* The Court noted that no express waiver of sovereign immunity existed in a specific written contract. *Id*.

The Court finds the Eighth Circuit opinions in *Dillon* and Hagen instructive. The plain language of the clause provides CCHA the ability to waive its sovereign immunity *by contract*. The "sue and be sued" clause alone should not act as a general waiver of tribal sovereign immunity.

**IT IS ORDERED** that the Defendants' Motion to Dismiss (Doc. 15) is **GRANTED.** The Clerk of Court should enter Judgment accordingly.

DATED this 2nd day of December, 2015.

Brian Morris
United States District Court Judge